198 So. 67

### EMERSON v. STATE.
### 6 Div. 571.

Court of Appeals of Alabama.
June 29, 1940.

Rehearing Denied Aug. 6, 1940.

460

DeGraffenried & McDuffie, of Tuscaloosa, for appellant.

Thos. S. Lawson, Atty. Gen., and Prime F. Osborn, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

This prosecution originated in the Inferior Court of Tuscaloosa County. The defendant was charged with the offense of violating the prohibition law of the State.

This appeal is from a judgment of conviction in the circuit court, which court acquired jurisdiction by an appeal from the Inferior Court aforesaid.

In the circuit court, the defendant was tried upon a complaint, filed by the Solicitor, the first count of which reads as follows: "The State of Alabama, by its Solicitor, complains of Miller C. Emerson, alias M. C. Emerson that, within twelve months before the commencement of this prosecution, he did sell, offer for sale, keep for sale, or otherwise dispose of spirituous, vinous or malt liquors, contrary to law".

The trial resulted in the conviction of the defendant on said count, and from the judgment of conviction this appeal was taken.

Upon the trial of the case in the court below the State introduced only one witness, namely, C. C. Miller, who testified upon his direct examination that he was an agent or undercover man for the Alcoholic Beverage Control Board of Alabama, and that he had been sent to Tuscaloosa County by said Board to do undercover or detective work, and that he was engaged in this work in said county from June 22nd to July 3rd, 1939. Miller further testified, in substance, that on the night of June 22nd, 1939, he went to the place of business of the defendant, on the Birmingham highway in Tuscaloosa County, in an automobile and in company with a Mr. Blankenship, another agent or undercover man of said Alcoholic Beverage Control Board, at about 9 o'clock P. M. and that when he reached said place of business he stopped his car and then saw one Stacy Bunn, or Pat Bunn as he was commonly called; that said Bunn came to the car and that the witness told Bunn that he desired to see Mr. Emerson; that Bunn went into the place of business and soon returned and told witness that Mr. Emerson said that if the witness wanted to see him that he would have to come inside; that he then went into this place and into a back room thereof where he saw Mr. Emerson eating at a table, where another man was also seated; that the witness told Mr. Emerson that he wanted to buy a pint of whiskey; that Mr. Emerson then asked the witness who was with him and he replied that his father was with him; that Mr. Emerson sent Stacy

Bunn for the whiskey and that Stacy Bunn returned with a pint of rye whiskey, for which the witness paid Mr. Emerson $1.25; that the witness did not drink any whiskey in this place of business; that he did not take any whiskey there; that all of the foregoing happened in Tuscaloosa County, Alabama, at the defendant's place of business, at the time named, and before the witness swore out the warrant in the case; that the witness thought he told the defendant that he was a car salesman from Anniston and was looking for a car which had been stolen from him and that his father was in the car parked on the outside.

On cross-examination, this witness testified in substance practically the same as he did upon his direct examination and in addition testified also that he did not know the man who was sitting with the defendant, at the table, when the witness approached the defendant and asked to buy the whiskey; that he did not know whether this man was Mr. Walker, or not; that he did not know Mr. Shirley Brown and did not know whether the man sitting at the table with the defendant was Shirley Brown.

After the above witness had testified, the State rested its case, and thereafter the defendant introduced six different witnesses, viz: Marvin L. Walker, James Steen, Shirley Brown, Mrs. Cora Henderson and Stacy, or Pat Bunn, none of whom were impeached, and each of whom testified, clearly and emphatically, that the defendant, M. C. Emerson, did not in person, or through the aid and assistance of Pat Bunn, or any other person, sell or deliver to Miller, the State's only witness, any spirituous, vinous or malt liquors as testified to by him. Each of these witnesses was at this place of business from the time Miller arrived there until he left.

Admittedly Miller was an undercover man, or detective, for the Alabama Alcoholic Beverage Control Board. He went to the place of business of the defendant, where, according to his own testimony, he misrepresented himself and the other agent who was with him, and importuned, solicited and requested the defendant to sell him whiskey in violation of law. He did not want this whiskey for his own consumption, or any other personal use. His business was, and the service for which he was employed and for which he was being paid by the Alabama Alcoholic Beverage Control Board was, to buy spirituous, vinous or malt liquors in violation of law, and then prosecute the seller, or sellers, for selling it.

In the case of Borck v. State, 39 So. 580, 581, which was a case involving the illegal sale of intoxicating liquors, our Supreme Court (Dowdell, J.) said: "The practice of encouraging others to violate the law in the way in which it was done here is not to be commended. The testimony of the witness who lends himself for that purpose, while admissible, is to be weighed by the jury in the light of such fact."

As this court understands and interprets the above pronouncement by our Supreme Court it was the duty of the trial court, in its general oral charge, to instruct the jury, with respect to the testimony of the witness Miller, that it was their duty to consider the conduct of this witness on that occasion in determining what weight they would give to his testimony. The trial court did not so instruct the jury in regard to the testimony of the witness, Miller. The court, in its oral charge, simply said to the jury: "It is obvious to you, gentlemen, that a man working for the ABC Board, buying liquor, is not going to tell that he is an employee of the Board."

As stated, State witness, Miller, testified upon his direct examination in response to questions propounded to him by the Circuit Solicitor, as follows: "Stacy Bunn gave me the pint of whiskey and I gave him $1.25. I paid the defendant, Miller C. Emerson, for the whiskey. The whiskey which is handed to me is the whiskey that Stacy Bunn brought to me and handed to me in the presence of Miller C. Emerson, and that is when I paid Miller C. Emerson for it."

Upon the direct examination of Ruth Chapman, a witness for the defendant, she testified, she was at the defendant's place of business on the night of June 22, 1939, about 9 P. M. when Mr. Miller and Mr. Blankenship came there in an automobile and Mr. Miller came into the building and had a conversation with defendant, etc. She was then asked the following question by defendant's counsel: "Q. Did Pat (meaning Stacy Bunn) bring a pint of whiskey in there and hand it to Mr. Miller?" The State objected to the above question. The trial court sustained the State's objection to said question and the defendant duly and legally excepted to this action of the court.

The testimony sought to be elicited by the above question was not only competent

as relating to the res gestæ of the offense charged in the complaint, but it was in direct rebuttal of the above noted testimony of the State's witness, C. C. Miller. The testimony sought to be elicited by said question from said witness was of the highest importance to the defendant. His guilt, or innocence, under the State's testimony, of the offense charged against him, depended entirely upon the fact as to whether or not Stacy Bunn, also called Pat Bunn, at the time and place testified to by the State's witness, C. C. Miller, brought and handed to said Miller a pint of whiskey. It was shown that Ruth Chapman was present at the time and place Miller claimed this whiskey was handed to him by said Bunn. The refusal of the trial court to allow said question to be propounded to said witness constitutes error for which the judgment of the trial court must be reversed and this cause remanded. The error complained of is presented under appellant's 9th assignment of error.

■ Shirley Brown was an important witness for the defendant. His testimony was highly beneficial to the defendant, if believed by the jury. It was shown that this witness was not related to defendant and was not interested in any way in the defendant's business. He worked for his own father in a grocery store in Tuscaloosa. He, Brown, testified he was present at defendant's place of business on the night, and at the time Miller, the State's witness, testified Stacy or Pat Bunn handed him a pint of whiskey. Mr. Brown further testified that he did not see Stacy, or Pat Bunn, bring and hand to Miller any whiskey; that he did not see any whiskey at defendant's place of business on that occasion, other than the whiskey Miller himself brought and had with him when he arrived. His testimony was in direct conflict with practically everything that Miller had testified to. Upon cross-examination, the State, over the objection and exception of defendant, was allowed to propound to Mr. Brown the following question: "Q. Have you had a case against you?" The question, as will be noted, was not confined to a case for violating the prohibition law, but by its terms extended to and embraced any case, of whatever kind or nature. This ruling was error. This court recognizes the latitude which should be allowed by a trial court upon cross-examination, but this question did not seek to elicit testimony showing any interest of the witness in the pending prosecution; it did not seek to

elicit testimony affecting the credibility of the witness, nor testimony tending to show any bias, prejudice or ill will on the part of the witness, or on the part of anyone connected with him. It was, therefore, not legitimate cross-examination for any relevant purpose in the case. It would appear, the sole purpose or object of this question was either a fishing expedition for something detrimental to the witness, or to embarrass and prejudice him before the jury. The question was detrimental and injurious to the substantial rights of the defendant and, as stated, the objection should have been promptly sustained. For like reasons also, the answer of the witness to said question, viz: "They put one against me," should have been excluded. This ruling also constitutes reversible error.

■ It is strenuously urged by the appellant that error prevailed in the action of the court in overruling and denying his motion for a new trial. Upon examination we find no exception appears in the bill of exceptions as to this ruling of the court, hence nothing is presented for our consideration in this connection.

As to defendant's application for change of venue, we see no necessity for this court to now consider this question. For the errors indicated, the judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.